**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Asli Baz,

       Petitioner,

                           Case No. 23 C 5017

  v.

                           Judge Jorge L. Alonso

Anthony Patterson,

       Respondent.

## Memorandum Opinion and Order

Pending before the Court is Respondent Anthony Patterson's motion to dismiss (ECF No. 14), which has been fully briefed. For the reasons below, the Court denies the motion.

## Background[1]

Petitioner Asli Baz and Respondent Anthony Patterson began a relationship with each other in approximately 2013. (Compl. ¶ 9, ECF No. 1.) The parties ultimately moved in together in Chicago in 2015, and had a son, A.P., in May 2017. (*Id.* ¶¶ 12.) During the relationship, Patterson verbally and physically abused Baz. (*Id.* ¶¶ 11, 18–19) In June 2017, Baz filed a petition for sole allocation of decision-making responsibilities and a majority of parenting time

---

[1] This background is taken from the alleged facts in Baz's complaint, which are accepted as true for purposes of Patterson's motion to dismiss. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). The Court also considers "not only the complaint itself, but also documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," as well as "additional facts set forth in [Plaintiff's briefing], so long as those facts are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (internal quotation marks and citations omitted). The Court thus takes judicial notice of the parties' Allocation Judgment referenced in their briefs and in Baz's complaint, which Baz does not challenge. The Court ignores the unverified alleged facts in Patterson's motion to dismiss. *See Gunn v. Cont'l Cas. Co.*, 622 F. Supp. 3d 694, 704 (N.D. Ill. 2022) ("The Court is limited in what it may consider in ruling on the Rule 12(b)(6) motion to dismiss.").

for A.P. in Chicago domestic relations court. (*Id.* ¶ 14.) As a result, the state court entered a Temporary Order of Protection in July 2017. (*Id.* ¶ 15.) Over the next several years, the parties continued to litigate in Illinois state court, including related to Baz's authorized relocation with A.P. to Madison, Wisconsin and later to Germany. (*Id.* ¶¶ 22–27.)

On May 23, 2022, the Illinois state court entered the parties' proposed order on relocation, parenting time, and significant decision-making responsibilities as an "Allocation Judgment: Allocation of Parental Responsibilities and Parenting Plan" (the "Allocation Judgment"). (*Id.* ¶ 28; *see also* Allocation Judgment, ECF No. 21-1.) Among other things, the Allocation Judgment allowed Baz to relocate with A.P. to Germany, and provided for Patterson to have certain parenting time with A.P. during A.P.'s holiday breaks. (Compl. ¶ 29, ECF No. 1.) The Allocation Judgment also states, "Pursuant to Article III of the Hague Convention of 25 October 1980 on the Civil Aspects of International Children Abduction (hereinafter 'Hague Convention'): The 'Habitual Residence' of [A.P.] is the United States of America, specifically the County of Cook, State of Illinois, United States of America." (Allocation Judgment, Art. VI, ECF No. 21-1.)

As permitted by the Illinois state court, Baz and A.P. relocated to Germany in May 2022, ultimately living in Erkrath, Germany. (Compl. ¶¶ 34–35, ECF No. 1.) In January 2023, Patterson refused to return A.P.'s United States passport as required by the Allocation Judgment at the conclusion of his December 2022/January 2023 parenting time. (*Id.* ¶¶ 43–44.) Patterson filed an "emergency" motion in Illinois state court shortly after, which was denied. (*Id.* ¶ 47.) Baz then sought in the German court system a custody order and an order court preventing A.P. from being removed from Germany, which ultimately resulted in Baz and Patterson agreeing to a global settlement and consent order to resolve all issues relating to A.P. in Germany and the

United States. (*Id.* ¶¶ 48–52.) The consent order included that Patterson would have parenting time with A.P. from June 19, 2023 until July 31, 2023, then would return A.P. to Germany. (*Id.* ¶ 52.)

After filing the consent order in Illinois state court on June 1, 2023, Patterson claimed in that court that he had been forced to agree to the global settlement in Germany. (*Id.* ¶ 54.) Baz therefore did not send A.P. to Illinois for Patterson's parenting time on June 19, 2023, anticipating that Patterson would not return A.P. to Germany on July 31, 2023. (*Id.* ¶ 56.) On July 3, 2023, Patterson appeared unannounced at A.P.'s school in Germany and removed A.P. (*Id.* ¶ 57.) The German police stopped Patterson at the airport in Dusseldorf, Germany, but evidently he was allowed to board his flight with A.P. after presenting the police with the Germany consent order reflecting that he was allowed his parenting time with A.P. in June and July 2023. (*See id.* ¶ 58.)

Patterson then filed actions for injunctive, declaratory, and other relief against Baz in Illinois state court, and did not return A.P. to Germany at the conclusion of his parenting time on July 31, 2023. (*Id.* ¶¶ 59, 63.) The Illinois state court has proceeded with Patterson's case and entered an order against Baz regarding the custody dispute. (*Id.* ¶ 62.)

On August 1, 2023, Baz sued Patterson under the Hague Convention, claiming that Patterson wrongfully retained A.P. in the United States in July 2023, that Germany (not Illinois) was A.P.'s place of habitual residence as of that date and so Germany custody law applies, and that A.P. thus should be returned to Baz in Germany. (*See id.* ¶¶ 42, 64–88.) On August 8, 2023, Patterson filed a motion to dismiss this case for lack of subject-matter jurisdiction or failure to state a claim, and alternatively to stay this case pending the parties' Illinois state court proceedings. (ECF No. 14.)

**Discussion**

In his motion, Patterson argues that the Court should (1) dismiss this case for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine; (2) dismiss the case for failure to state a claim based on collateral estoppel; and (3) alternatively stay this case pending resolution of state proceedings. The Court considers and rejects each argument below.

## I.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Patterson first argues that the Court lacks subject-matter jurisdiction over this case under the *Rooker-Feldman* doctrine, which "dictates that federal district courts lack jurisdiction to review decisions of state courts." *Levin v. Attorney Registration & Disciplinary Comm'n*, 74 F.3d 763, 766 (7th Cir. 1996) (citations omitted). He argues that the Allocation Judgment from Illinois state court provided that Illinois is A.P.'s place of habitual residence and that the Illinois state court retained exclusive jurisdiction to modify the Allocation Judgment, including its determination of A.P.'s habitual residence. Patterson claims that this Court cannot adjudicate Baz's Hague Convention petition without modifying the Illinois state court's Allocation Judgment in violation of the *Rooker-Feldman* doctrine.

Baz counters that the *Rooker-Feldman* doctrine does not apply to this Hague Convention case because the Allocation Judgment adjudicated custody, which Baz does not claim to review via this case, and this case is not "inextricably intertwined" with the Allocation Judgment to trigger the *Rooker-Feldman* doctrine. Patterson replies that this case is inextricably intertwined with the Allocation Judgment and its determination of habitual residence and exclusive state-court jurisdiction, given that Baz now seeks to have this Court identify Germany as A.P.'s place

4

of habitual residence, in direct contravention of the state court's prior determination that Illinois is A.P.'s place of habitual residence for purposes of the Hague Convention.

The Court agrees with Baz. First, the Allocation Judgment purported to determine A.P.'s place of habitual residence as of May 23, 2022—over one year ago. In contrast, this case is to determine A.P's place of habitual residence "at the time of removal or retention"—here, July 2023. *Monasky v. Taglieri*, 140 S. Ct. 719, 726 (2020). Baz's petition thus does not seek to review or modify the May 23, 2022 Allocation Judgment addressing custody, but rather to adjudicate a dispute under the Hague Convention as of July 2023.

Second, though the Allocation Judgment stated that A.P.'s "Habitual Residence" was Illinois "[p]ursuant to Article III of the Hague Convention," the related state case did not arise under the Hague Convention and ICARA. *See Silverman v. Silverman*, 338 F.3d 886, 894 (8th Cir. 2003) ("[F]ull faith and credit shall be accorded a prior judgment in either state or federal court, but only if the judgment arises through adjudication of a Hague Convention claim in accordance with the dictates of the Convention and ICARA."). Thus, the *Rooker-Feldman* doctrine does not apply to undermine this case brought under the Hague Convention. *See id.* ("The *Rooker-Feldman* doctrine has no application under the circumstances of this case.").

## II. Motion to Dismiss for Failure to State a Claim

Next, Patterson argues that Baz has failed to state a claim because her action is barred by collateral estoppel.[2] Specifically, Patterson argues that the parties already obtained a determination of A.P.'s habitual residence in state court under the Allocation Judgment, and Baz

---

[2] Patterson appears to mistakenly equate claim preclusion (also known as *res judicata*) and collateral estoppel (also known as issue preclusion), which are distinct doctrines. (*See* ECF No. 14 at 4 (referring to "[c]ollateral estoppel (claim preclusion)"). Because Patterson's arguments substantively address only collateral estoppel, the Court evaluates dismissal based on that doctrine.

may not now relitigate that issue in the present action. Baz counters that issue preclusion does not apply because the Allocation Judgment was a custody determination, not a Hague Convention determination.

Because Patterson seeks to apply collateral estoppel based on the Allocation Judgment from Illinois state court, this Court looks to Illinois law for collateral estoppel. *See Kunzelman v. Thomson*, 799 F.2d 1172, 1176 (7th Cir. 1986) ("In determining when collateral estoppel applies federal courts must look to state law and determine whether another state court would give preclusive effect to the prior proceeding." (citations omitted)). Under Illinois law, collateral estoppel applies when "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication." *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004) (citation omitted).

Here, Patterson lacks the first element of collateral estoppel—an identical issue to that represented in the May 23, 2022 Allocation Judgment. As already indicated, the Allocation Judgment was not part of a Hague Convention action and, at most, adjudicated A.P.'s habitual residence as of May 23, 2022—not as of July 2023, which is the relevant date in this case. *See Hulsh v. Hulsh*, 2020 WL 11401634, at *6 (N.D. Ill. July 21, 2020) ("The children's habitual residence on October 24, 2019 is not the same issue that was litigated in the Slovakian Hague proceedings, so the Slovakian Hague decision has no preclusive effect. . . . No single fact . . . is dispositive across all cases."). That the parties appeared to agree that A.P.'s habitual residence was Illinois as of May 23, 2022 may be relevant to this action's assessment of A.P.'s habitual residence approximately fourteen months later, but it is not identical or dispositive, and does not

preclude the instant inquiry. *See also Monasky*, 140 S. Ct. at 726 ("We hold that the determination of habitual residence does not turn on the existence of an actual agreement."); *see also Guzzo v. Cristofano*, 719 F.3d 100, 107 n.6 (2d Cir. 2013) ("Although parents cannot stipulate to habitual residency, . . . courts have widely considered parental intent as one of the relevant factors[.]" (citing cases)). Therefore, collateral estoppel does not preclude Baz's argument that A.P.'s place of habitual residence is not Illinois as of July 2023.

## III.    Request for Stay

As his last argument, Patterson argues that if the Court does not dismiss Baz's petition, it nevertheless should abstain and stay this case pending resolution of the parties' pending custody dispute in Illinois state court based on *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Baz responds that though Patterson has sought declaratory relief of a "habitual residence determination" in Illinois state court, this does not affect the instant case and abstention is inappropriate.

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quoting *Colorado River*, 424 U.S. at 817). However, the Supreme Court in *Colorado River* held that parallel litigation in state court might warrant a stay in "limited" and "exceptional" circumstances based on various factors. *Colorado River*, 424 U.S. at 818. In deciding whether litigations are parallel, a court considers "whether there is a substantial likelihood that the foreign litigation will dispose of all claims presented in the federal case." *AAR*, 250 F.3d at 518 (internal quotation marks and citation omitted). If the litigations are parallel, a court then considers various factors to determine whether "exceptional circumstances" exist to warrant abstention, including (1) whether the state court has assumed jurisdiction over

property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691 (7th Cir. 1985). But no single factor is determinative, and "[t]he decision to abstain is based on an assessment of the totality of the circumstances." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 900. "If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR*, 250 F.3d at 518 (citations omitted).

Here, abstention is not appropriate because the state action is not a parallel litigation under *Colorado River*. The state case does not involve a Hague Convention claim at all, and accordingly will not entirely dispose of Baz's Hague Convention claim in the instant case. Without providing the Court with any of the parties' state filings or orders, Patterson has represented only that the state case will involve, as part of custody disputes, an unexplained adjudication of A.P.'s habitual residence based on the Allocation Judgment—which, as explained above, did not involve the same question of habitual residence presented in Baz's pending Hague Convention claim. Patterson does not explain how the state-court action will involve the same specific questions under the Hague Convention that are presented in this case—including determining when the removal of A.P. took place, what A.P.'s habitual residence was as of that date, potential affirmative defenses, and other Hague Convention-specific issues. *See Holder v.*

*Holder*, 305 F.3d 854, 868 (9th Cir. 2002) (finding an abuse of discretion in staying proceedings under *Colorado River* because "[t]he state court's custody determination did not resolve several of the issues critical to the disposition of a Hague Convention petition"). Unlike in the cases Patterson cites, there is substantial doubt that the parties' ongoing state proceedings will dispose of Baz's Hague Convention claims. *See Cordoba v. Mullins*, No. 20 C 2721, 2020 WL 3429771, at *4 (N.D. Ill. June 23, 2020) (finding actions parallel where "the State Action will resolve the same Hague Convention issues present here"); *Bordelais v. Bordelais*, No. 17 C 4697, 2017 WL 6988655, at *2 (N.D. Ill. Dec. 19, 2017) (finding parallel actions where the petitioner "filed the exact same petition in both courts, and both suits involve the same parties, arise out of the same facts, and raise similar factual and legal issues"). The Court thus will not stay proceedings at this time. *See Walker. v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012) ("We note as well that courts faced with similar arguments based on abstention, the *Rooker-Feldman* doctrine, and *res judicata* have held that these doctrines do not deprive the federal courts of jurisdiction to rule on the merits of Convention petitions[.] . . . [L]ike our sister circuits, we find no merits in these points.").

## Conclusion

For the above reasons, the Court denies Patterson's motion to dismiss (ECF No. 14) in its entirety.

As indicated at its August 30, 2023 status hearing, the Court intends to adjudicate this case expeditiously. The Court reminds the parties that they are to meet and confer and submit a joint status report by September 5, 2023 addressing the status of their state-court proceedings and their proposed procedures for adjudicating this case. The joint status report should address, for example: the latest developments in the state case; the parties' proposed dates and duration for an

evidentiary hearing; any necessary discovery or other pre-hearing deadlines; the status of any settlement discussions; whether the parties jointly consent to proceeding before the Magistrate Judge for all purposes; appropriate contact rights for Petitioner; and whether the Court should appoint a guardian ad litem for A.P.

The Court accordingly denies Baz's motion to expedite (ECF No. 6) as moot.

**SO ORDERED.**                                    **ENTERED: September 1, 2023**

**HON. JORGE ALONSO**

**United States District Judge**