IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ASLI BAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No.  23-cv-5017 |
| | ) | |
| ANTHONY PATTERSON, | ) | Judge Alonso |
| | ) | |
| Respondent. | ) | |

**ANSWER**

Respondent, Anthony Patterson ("Anthony"), by and through his undersigned counsel, as and for his Answer to the Petition for Return filed by Petitioner, Asli Baz ("Asli")

1.     This Petition is filed as a result of the wrongful retention of the parties' son AP, born in 2017 (the "child"), from his habitual residence of Germany in the United States. The child is a dual citizen of Germany and the United States. The wrongful retention began on or about July 18, 2023, or in the alternative August 1, 2023. The child was to be returned home to Germany on or before July 31, 2023.

**ANSWER: Anthony denies that the child is a dual citizen of the United Staes and Germany.  Anthony denies the remaining allegations of paragraph 1.**

2.     The Mother is the child's Mother. The Mother is a German Citizen.

**ANSWER: Anthony admits the allegations of paragraph 2.**

3.     The Father is the child's father. The Father is an American Citizen.

**ANSWER: Anthony admits the allegations of paragraph 3.**

4.     This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (hereinafter the "Hague

Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA").

**ANSWER: Anthony admits that the Petition is brought as alleged but denies that Asli is entitled to relief thereunder.**

5.      The Convention came into effect in the United States of America on July 1, 1988, and was ratified between the United States of America and Germany on December 1, 1990.

**ANSWER: Anthony admits the allegations of paragraph 5.**

6.      The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

**ANSWER: Anthony admits the allegations of paragraph 6 but states that the objects of the Convention, as established by case law, also include the prevention of stealth abduction as Asli did in this case by secretly planning wrongfully to retain the child in Germany even before the entry of the Allocation Judgment in state court.**

## II. JURISDICTION

7.      This Court has jurisdiction under ICARA § 9003 because this case involves the retention of a child under the age of 16 to the United States from his habitual residence of Germany. The child is currently located within the jurisdiction of this Court in the Northern District of Illinois.

**ANSWER: Anthony denies the allegations of paragraph 7 for the reasons stated in his Motion to Dismiss.**

8. Congress has specifically granted concurrent original jurisdiction to the federal courts of actions arising under the Hague Convention. ICARA § 9003. State court custody actions may not trump clearly granted federal court jurisdiction to decide actions arising under Hauge Convention.

**ANSWER: Anthony admits the first sentence of paragraph 8 and states that the ICARA grants exactly the same jurisdiction to state courts, including the Circuit Court of Cook County, as it does to the federal courts, and that that the Circuit Court in fact exercised that jurisdiction in this case. Anthony denies the allegations of the second sentence of paragraph 8 and states that due to the state court's concurrent jurisdiction there was not, and could not be, any attempt to "trump" federal jurisdiction.**

### III. FACTS

9. The Mother and Father met and began a relationship with each other in approximately 2013. At that time, the Mother lived in the United Kingdom and the Father lived in Miami, Florida.

**ANSWER: Anthony admits the allegations of paragraph 9.**

10. The Mother moved to Chicago on a student visa in 2015 to pursue her doctoral degree in clinical psychology at Roosevelt University. The Mother and Father moved in together in Chicago thereafter. The parties are not, and never have been, married to each other.

**ANSWER: Anthony admits that the parties were never married and lived together. Anthony denies the remaining allegations of paragraph 10 as neither complete nor accurate.**

11. All throughout the parties' relationship, the Father has engaged in coercive control against the Mother. After the parties moved in together in Chicago in 2015, the Father's abuse of the

Mother escalated to verbal abuse. After the child's birth in 2017, the Father escalated his abuse to physical abuse and threats to arrange the Mother's deportation and to take the child from her.

**ANSWER: Anthony denies the allegations of paragraph 11, and further answering, states that Asli engaged in verbal abuse, which escalated to physical abuse, of him.**

12. The parties' son, AP, was born in Illinois in May 2017.

**ANSWER: Anthony admits the allegations of paragraph 12.**

13. At the time the child was born, the Mother and Father owned and resided together in a three-story house on South Wabash Avenue and managed an Airbnb business together.

**ANSWER: Anthony admits the allegations of paragraph 13 and notes that Asli's allegations of abuse are completely inconsistent with her cohabitation with Anthony, her owning a business with Anthony, and her agreement to joint parental responsibility as provided in the Allocation Judgment.**

14. Less than a month after the child's birth, on June 5, 2017, as a result of the Father's domestic violence, the Mother filed a petition in domestic relations court in Chicago seeking sole allocation of significant decision-making responsibilities, and a majority of parenting time for AP.

**ANSWER: Anthony admits that Asli filed a petition, the allegations of which speak for themselves, and notes that Asli agreed to joint, not sole, parental responsibility, and otherwise denies the allegations of paragraph 14.**

15. On July 17, 2017, the court entered a Temporary Order of Protection regarding parenting time, contact between the parties, and management of the parties' business.

**ANSWER: Anthony admits the allegations of paragraph 15.**

16. In accordance with the order, the child was to live with the Mother, and the Father was to have certain periods of daytime (not overnight) parenting time with the child each week.

**ANSWER: Anthony denies the allegations of paragraph 16 on the ground that the order speaks for itself.**

17.     Also in accordance with the order, the Mother was to live on the first and second floors of the South Wabash Avenue property exclusively, and the Father was to live in the basement of the South Wabash Avenue property. During the Father's parenting time, he was permitted temporary use of the kitchen on the first floor of the property.

**ANSWER: Anthony denies the allegations of paragraph 17 on the ground that the order speaks for itself.**

18.     On November 24, 2017, the Father violated the terms of the order and committed a domestic battery against the Mother. The Father entered the child's nursery, grabbed the Mother, threw her to the ground, put her in a chokehold, and threatened to kill the Mother and child.

**ANSWER: Anthony denies the allegations of paragraph 18.**

19.     The Mother fought off the Father and he eventually released the Mother and ran to the basement. The local police had already been to the South Wabash Avenue property that day approximately 20 minutes before the Father attacked the Mother. The Mother had called the police to seek assistance because she discovered the Father upstairs in the home removing doors to the property, all in violation of the order. The Mother called the police again after the Father attacked her. The same police officer attended at the South Wabash Avenue property and arrested the Father.

**ANSWER: Anthony denies the allegations of paragraph 19.**

20.     The Father was charged with and later convicted of domestic battery. He was sentenced to 18 months of conditional discharge, which included a requirement that he complete domestic violence classes.

**ANSWER:** **Anthony admits the allegations of paragraph 20.**

21.     The Father attempted to challenge his conviction by filing a motion for retrial claiming ineffective assistance of counsel. The court denied the Father's motion. The Father appealed his conviction to the Appellate Court of Illinois, First District. The appellate court affirmed the lower court's conviction of the Father.

**ANSWER: Anthony admits the allegations of paragraph 21.**

22.     Litigation between the parties relating to AP continued over the course of the next two years in the Illinois state court.

**ANSWER: Anthony admits the allegations of paragraph 22.**

23.     In April 2019, the Mother filed a proper notice in the Illinois state court stating her intent to relocate with the child to Madison, Wisconsin to complete her mandatory pre-doctoral internship. The Father objected to the Mother's requested relocation.

**ANSWER: Anthony denies the allegations of paragraph 23 on the ground that the state court pleadings and orders speak for themselves.  Anthony admits that he objected to the requested relocation.**

24.     On August 5, 2019, the Illinois state court entered an order permitting the Mother to relocate with the child to Madison, Wisconsin. The Illinois state court ordered a contact schedule for the Father with the child.

**ANSWER: Anthony denies the allegations of paragraph 24 on the ground that the state court pleadings and orders speak for themselves.**

25.     In April 2020, the Mother filed a proper notice in the Illinois state court stating her intent to relocate with the child from Wisconsin to Minnesota for her mandatory postdoctoral fellowship in forensic psychology. On September 2, 2020, the Illinois state court granted the

DocuSign Envelope ID: 6A8CF0D6-3F3C-478F-8A2C-8F6E6898B04E

Mother's motion and entered an order permitting the Mother to relocate with the child to Minnesota. The Illinois state court ordered a contact schedule for the Father with the child.

**ANSWER: Anthony denies the allegations of paragraph 25 on the ground that the state court pleadings and orders speak for themselves. Further answering, Anthony states that in the case of both relocations, to Wisconsin and Minnesota, he and Asli had equal parenting time with the child and the child attended the same school (the Garden School).**

26. On June 23, 2021, the Mother filed a motion in the Illinois state court seeking permission to relocate with the child to Germany. The Mother had finished her postdoctoral fellowship at that time and had received a 6-month extension of her student visa from the United States government because of the COVID-19 pandemic. Her immigration status in the United States under her student visa would therefore expire in May 2022 at the conclusion of her visa extension. The Father opposed the Mother's motion.

**ANSWER: Anthony denies the allegations of paragraph 26 on the ground that the state court pleadings and orders speak for themselves. Anthony admits that he opposed Asli's motion.**

27. The Illinois state court held a three-day trial on the Mother's relocation motion. On May 9, 2022, the court granted permission for the Mother to relocate to Germany. It instructed the parties' respective counsel to draft an agreed-upon order containing the details of parenting time and significant decision-making responsibilities in light of the court's decision to permit the relocation. After the Illinois state court gave its ruling on the relocation and instructions for drafting the proposed order, it held two further hearings, on May 11 and 17, 2022 respectively, to address the summer 2022 schedule for the child and certain financial aspects of the relocation. The Mother was

7

permitted to relocate with the child to Germany while the parties' respective counsel finalized the proposed consent order.

**ANSWER: Anthony denies the allegations of paragraph 27 on the ground that the state court pleadings and orders speak for themselves and that Asli's allegations of what occurred during the proceedings are neither complete nor accurate. Anthony notes that despite the "three-day trial", Asli stipulated to the entry of the parties' Allocation Judgment which provided that the child's habitual residence was the state of Illinois. Anthony further states that the state court's order of May 12, 2022, permitted Asli to travel internationally, not relocate, and that the parties intended not a permanent but a temporary relocation since in the same Allocation Judgment they stipulated that Illinois would remain the habitual residence of the child and that the Circuit Court of Cook County would retain continuing exclusive jurisdiction.**

28.     On May 23, 2022, the Illinois state court entered the parties' proposed order on relocation, parenting time, and significant decision-making responsibilities as an "Allocation Judgment: Allocation of Parental Responsibilities and Parenting Plan" (the "2022 Relocation Order").

**ANSWER:     Anthony admits the allegations of paragraph 28.**

29.     In the 2022 Relocation Order, the parties agreed, and the Illinois state court ordered, *inter alia*: (A) the Mother was permitted to relocate with the child to Germany; (B) the child would live with the Mother; (C) the Father would have parenting time with the child on a specific schedule during the child's summer, autumn, winter, spring and holiday breaks from school; (D) the exact dates of the Father's parenting time during all such breaks are subject to change each year

8

based upon the child's school schedule; (E) the parents may modify the parenting time schedule by written agreement; and (F) the parents may agree to vary the terms of the relocation.

**ANSWER: Anthony denies the allegations of paragraph 29 on the ground that the state court pleadings and orders speak for themselves.**

30.     The 2022 Relocation Order contains a mandatory mediation clause that requires the parties to attempt to resolve any disputes relating to the 2022 Relocation Order through settlement negotiations and mediation.

**ANSWER: Anthony denies the allegations of paragraph 30 on the ground that the state court pleadings and orders speak for themselves.**

31.     The 2022 Relocation Order requires that the parent exercising parenting time with the child shall maintain physical possession of the child's passport during their parenting time, and that the parties shall exchange the child's passport when they exchange the child for parenting time. The 2022 Relocation Order further provides that "[i]f the parties fail to exchange the minor child's passport as required, airport police can enforce this order to ensure the passport's return."

**ANSWER: Anthony denies the allegations of paragraph 31 on the ground that the state court pleadings and orders speak for themselves.**

32.     The 2022 Relocation Order further provides the mechanism the parties must follow in the event the Mother seeks to relocate permanently the child from Dusseldorf, Germany to any other place in the future.

**ANSWER: Anthony denies the allegations of paragraph 32 on the ground that the state court pleadings and orders speak for themselves.**

DocuSign Envelope ID: 6A8CF0D6-3F3C-478F-8A2C-8F6E6898B04E

33.     The 2022 Relocation Order contains assertions that the child's *future* Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") "home state" and *future* Hague Convention habitual residence will be considered to be Illinois. But UCCJEA home state and Hague Convention habitual residence must be determined based upon the facts that exist at the time any court must make such a determination on either issue.

**ANSWER: Anthony denies the allegations of paragraph 33 on the ground that the state court pleadings and orders speak for themselves.**

34.     In accordance with the Illinois state court's May 9, 2022 ruling, which was followed by the 2022 Relocation Order, the Mother and child relocated to Germany on or about May 13, 2022.

**ANSWER: Anthony admits that Asli and the child relocated. Anthony denies the remaining allegations of paragraph 34. Further answering, Anthony states that she obtained a German passport for the child without his consent.**

35.     The child attends school in Germany. He attended the International School on the Rhine ("ISR") in Dusseldorf for kindergarten from August 2022 until December 2022. But the Father failed to pay his share of the child's ISR tuition as required by the 2022 Relocation Order. The Mother could not afford to pay the ISR tuition herself. She therefore had no alternative but to enroll the child in a different school, close to the Mother's home in Germany, to complete kindergarten. The child attended kindergarten in Germany from January 2023 until July 2023, at the Johanniter Kindergarten in Erkrath, Germany, where the Mother and child live.

**ANSWER: Anthony denies the allegations of paragraph 35.**

4874-8692-2368, v. 1

36.     The child begins first grade next week in Germany and will attend the Regenbogen Grundschule Primary School in Erkrath, Germany. The school year begins on August 8, 2023.

**ANSWER: Anthony denies the allegations of paragraph 36.**

37.     The child receives routine medical care, mental health care, and dental care in Germany.

**ANSWER: Anthony admits the allegations of paragraph 37 and, further answering, states that the same is true in Chicago.**

38.     The child participates in extracurricular activities, playdates, and cultural activities in Germany.

**ANSWER: Anthony admits the allegations of paragraph 38 and, further answering, states that the same is true in Chicago.**

39.     The child has extended family and friends in Germany.

**ANSWER: Anthony denies the allegations of paragraph 39.**

40.     The child is fully involved and integrated in all aspects of daily and cultural life in Germany. The child is fluent in German, Turkish, and English.

**ANSWER: Anthony denies the allegations of paragraph 40 except denies that the child is fluent in Turkish.**

41.     The Mother is fully involved in all of the child's schooling, medical care, mental health care, dental care, and other activities in Germany. The Mother provides all of the child's day-to-day care in Germany.

**ANSWER: Anthony denies the allegations of paragraph 41.**

42.     Germany is the child's habitual residence.

**ANSWER: Anthony denies the allegations of paragraph 42. Further answering, Anthony states that before Asli temporarily relocated the child to Germany in 2022, he had lived his entire life in the United States and had become acclimated and habitually resident to his United States environment to an extent than cannot possibly have resulted from his stay in Germany. Anthony further states that when Asli moved to Germany in May 2022, he had parenting time with the child in Illinois from June to August 2022 and again from July 2023 to now, so that the child has not been a resident of Germany for the past 18 months as Asli alleges.**

43. In October 2022, the Father notified the Mother that he intended to exercise his December 2022/January 2023 parenting time provided for in the 2022 Relocation Order.

**ANSWER: Anthony admits the allegations of paragraph 43.**

44. At the conclusion of the Father's parenting time on January 5, 2023, he refused to return the child's United States passport to the Mother as required by the 2022 Relocation Order. The Father refused to tell the Mother why he would not return the passport as required by the 2022 Relocation Order, and instead threatened the Mother that she would "find out" why he refused to return it as required.

**ANSWER: Anthony denies the allegations of paragraph 44.**

45. As contemplated and authorized by the 2022 Relocation Order, the Mother sought the assistance of the German police to obtain the child's United States passport from the Father in accordance with the 2022 Relocation Order.

**ANSWER: Anthony denies the allegations of paragraph 45.**

46. The Father continued to refuse to return the child's United States passport to the Mother.

**ANSWER: Anthony denies the allegations of paragraph 46.**

47.     Shortly thereafter, the Father attempted to file an "emergency" motion in the Illinois state court seeking sole custody of the child. The Father's motion was denied.

**ANSWER: Anthony admits the allegations of paragraph 47**

48.     The Mother therefore sought the assistance of the German justice system in resolving the passport issue, given that her efforts to resolve the passport issue directly with the Father and then through the German local police had not been successful. She filed a case in Germany seeking to address the passport issue by seeking an order preventing the child from being removed from Germany and seeking a custody order in the German court. The German court entered initial interim orders prohibiting the removal of the child from Germany during the pendency of the German proceeding, all of which were the result of the Father refusing to return the passport.

**ANSWER: Anthony admits that legal proceedings occurred in Germany. Anthony denies the remaining allegations of paragraph 48 on the ground that they do not fully or accurately describe what occurred.**

49.     The Father then engaged fully and voluntarily in the German proceedings. He retained counsel in Germany and was represented by counsel at all stages of the German proceedings. An interpreter was provided for the Father in the German proceedings.

**ANSWER: Anthony admits that legal proceedings occurred in Germany. Anthony denies the remaining allegations of paragraph 49 on the ground that they do not fully or accurately describe what occurred.**

50.     The parties, through their respective counsel in Germany, agreed to enter into global settlement negotiations in the context of the German proceeding, which fulfilled the

mandatory mediation clause of the 2022 Relocation Order. The parties, through their respective counsel, agreed for the German court to enter an order reflecting the parties' substantive agreement resolving all issues pending between them relating to AP both in Germany and in the United States of America.

**ANSWER: Anthony admits that legal proceedings occurred in Germany. Anthony denies the remaining allegations of paragraph 50 on the ground that they do not fully or accurately describe what occurred.**

51.     The parties also agreed to the mechanism by which the Illinois state court would be informed of the parties' agreement pursuant to the mediation requirement, and the German court's order; namely that the Father was to file the German settlement agreement and consent order in the Illinois state court.

**ANSWER: Anthony admits that legal proceedings occurred in Germany. Anthony denies the remaining allegations of paragraph 51 on the ground that they do not fully or accurately describe what occurred.**

52.     The parties agreed through the required mediation procedure, and the German court ordered, *inter alia*, as follows:

    A.    The child lives with the Mother in Germany;

    B.    The 2022 Relocation Order shall remain in effect;

    C.    For the summer of 2023, the child shall be with the Father for the Father's parenting time from June 19, 2023 to July 31, 2023;

    D.    The Father shall have contact with the child in Germany from 10:00 a.m. until 6:00 p.m. on August 2 and 3, 2023;

E.     The Father may attend the child's school enrollment ceremony in Germany on August 8, 2023;

F.     The travel ban previously entered by the German court would be lifted;

G.     The Father will return the child to Germany at the end of his contact periods, including the end of his summer 2023 contact period on July 31, 2023;

H.     The Father shall keep the child's American passport and the Mother shall keep the child's German passport;

I.     The parties' respective cases pending in Germany and Illinois relating to AP shall not be pursued any further given that the parties reached a global agreement in Germany with the assistance of their respective German counsel, which had been entered as a German consent order; and

J.     The Father shall file the parties' German settlement agreement in the Illinois state court in order to end all litigation based on the parties' global agreement reached with the assistance of their German counsel, which had been entered as a German consent order.

**ANSWER: Anthony denies the allegations of paragraph 52 on the ground that the German court pleadings and orders speak for themselves.**

53.     On June 1, 2023, the Father submitted the German consent order to the Illinois state court as required and in accordance with the modification provisions of the 2022 Relocation Order.

**ANSWER: Anthony admits the allegations of paragraph 53.**

54.     Then in an about-face and in direct violation of the German consent order, the Father filed a different paper in the Illinois state court, in which he claimed, despite having fully participated in the German proceeding and having been represented by counsel in Germany and having an interpreter present in the German proceeding, that he was forced in some unspecified way to agree to the global settlement agreement and consent order in Germany.

**ANSWER: Anthony denies the allegations of paragraph 54 on the ground that the state court pleadings and orders speak for themselves.**

55.     The Mother properly notified the German court that the Father had not complied with the terms of the global settlement agreement and German consent order, in that he was continuing to pursue his litigation in Illinois and was challenging the German consent order in Illinois.

**ANSWER: Anthony admits that Asli notified the German court.  Anthony denies the remaining allegations of paragraph 55.**

56.     The Mother therefore did not send the child to Illinois on June 19, 2023 for the Father's summer 2023 parenting time, because the Father had by that time affirmatively stated to the Illinois state court that he was challenging the German consent order. The Mother therefore anticipated that the Father would not return the child home to Germany on July 31, 2023 in accordance with the terms of both the 2022 Relocation Order and the German consent order.

16

**ANSWER: Anthony admits that Asli did not send the child to Illinois on June 19, 2023 for his parenting time. Anthony denies the remaining allegations of paragraph 56.**

57.     The Father then appeared unannounced at the child's school in Germany on or about July 3, 2023, stormed into the child's classroom, and took the child from the kindergarten. The kindergarten staff called the German police.

**ANSWER: Anthony admits that he came to the school and took the child. Anthony denies the remaining allegations of paragraph 57.**

58.     The German police located and stopped the Father at the airport in Dusseldorf, Germany. Despite challenging the German consent order in Illinois, the Father presented the German police with a copy of the German consent order as verification that he was authorized to take the child to the United States.

**ANSWER: Anthony admits that the German police stopped him at the airport. Anthony denies the remaining allegations of paragraph 58 and, further answering, states that police contacted the German judge who then authorized his return to the United States with the child.**

59.     The Father then initiated cases for injunctive relief, ex parte relief, declaratory relief and contempt against the Mother in the Illinois state court. The Father made it clear in the Illinois state court proceedings that he does not intend to return the child to Germany at the conclusion of his parenting time.

**ANSWER: Anthony denies the allegations of paragraph 59 on the ground that the state court pleadings and orders speak for themselves.**

60.     Based on the Father's express statements in the Illinois state court case that he will not return the child to Germany, on July 18, 2023 the Mother submitted her Hague

Convention Application for Return to the Central Authorities for the United States and Germany seeking the return of the child to Germany.

**ANSWER: Anthony denies the allegations of paragraph 60 on the ground that the state court pleadings and orders speak for themselves.**

61.     The United States Department of State Office of Children's Issues therefore sent its Article 16 notification to the Illinois state court. The Article 16 notice provides notice to the state court of the pending Hague Convention Application, the retention of the child, and that the merits of any substantive custody case must be stayed until the final determination and conclusion of the Hague Convention case.

**ANSWER: Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 61.**

62.     The Illinois state court refused to comply with the treaty and refused to stay the custody merits case as required by Article 16 of the Hague Convention and international comity. Instead, despite having received the State Department's Article 16 notification, and despite the Mother requesting that the Illinois state court stay its case as required by the treaty, the Illinois state court has proceeded with its case and entered an order against the Mother relating to the merits of the custody dispute.

**ANSWER: Anthony denies the allegations of paragraph 62 on the ground that the state court pleadings and orders speak for themselves.**

63.     The child was required to be returned to Germany at the conclusion of the Father's parenting time on July 31, 2023. The Father has not returned the child to Germany, which is a breach of the Mother's rights of custody under German law.

**ANSWER: Anthony admits that he has not returned the child. Anthony denies the remaining allegations of paragraph 63.**

## IV. COUNT I – WRONGFUL RETENTION

64. The Mother restates and re-alleges the allegations contained in Paragraphs 1 through 63 as if fully set forth herein.

**ANSWER: Anthony repeats and realleges his answers to paragraphs 1 through 63 as if fully set forth herein.**

65. The Hague Convention applies to cases in which a child under the age of 16 years has been removed or retained from his or her habitual residence in breach of rights of custody under the law of the child's habitual residence, which the petitioner had been exercising at the time of the wrongful removal and wrongful retention of the child.

**ANSWER: Anthony denies the allegations of paragraph 65 on the ground that the Convention speaks for itself.**

66. The child is under the age of 16.

**ANSWER: Anthony admits the allegations of paragraph 66.**

67. The child's habitual residence is Germany, and was Germany on the date the Father retained the child in the United States from Germany.

**ANSWER: Anthony denies the allegations of paragraph 67.**

68. From the totality of the circumstances perspective as of the date of retention on July 18, 2023 or in the alternative August 1, 2023, Germany was the child's home.

**ANSWER: Anthony denies the allegations of paragraph 68.**

69. Germany is the child's ordinary home and holds a degree of settled purpose from the child's perspective.

**ANSWER: Anthony denies the allegations of paragraph 69.**

70.    The child is fully involved and integrated in all aspects of daily and cultural life in Germany. The child has extended family and friends in Germany. The child receives routine medical care, mental health care, and dental care in Germany. The child attends school in Germany, and participates in extracurricular activities, playdates, and cultural activities in Germany. The child is fluent in German, Turkish, and English.

**ANSWER: Anthony denies the allegations of paragraph 70.**

71.    At the time the Father retained the child in the United States from Germany, the Mother had (and continues to have) Hague Convention article 5*a* "rights of custody" to the child under German law.

**ANSWER: Anthony denies the allegations of paragraph 71.**

72.    German Civil Code ("BGB"), Sec. 1626a I No. 1, provides that parents who are not married to one another have joint parental custody if they declare that they wish to exercise joint parental custody.

**ANSWER: Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 72.**

73.    Such a declaration must be recorded by a German civil law notary (Sec. 1629d I BGB) or "protocolized" by a Court (Sec. 127a BGB).

**ANSWER: Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 73.**

74.    The parents in this matter entered into the Consent Order in the German Court on May 31, 2023, as set forth above, in which they agreed that they would continue to have joint parental custody for the child.

**ANSWER: Anthony admits the allegations of paragraph 74.**

75.     The German Consent Order satisfies the "protocolization" requirement under German law.

**ANSWER:   Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 75.**

76.     The Mother and Father therefore have joint parental custody of the child under German law.

**ANSWER: Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 76.**

77.     Parental custody of a child under German law includes rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence.

**ANSWER: Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 77.**

78.     It is a breach of joint parental custody under German law for one holder of joint parental custody to retain a child outside Germany without the consent of the other holder of joint parental custody.

**ANSWER: Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 78.**

79.     The Father's retention of the child in the United States is therefore in breach of the Mother's Hague Convention article 5*a* "rights of custody."

**ANSWER: Anthony denies the allegations of paragraph 79.**

80.     At the time the Father retained the child in the United States from Germany, the Mother was exercising her rights of custody within the meaning of Articles 3 and 5*a* of the

21

Convention by living with the child, caring for the child, fully participating in the child's life, and undertaking all parental rights the child was born, or would have been so exercising her rights of custody but for the retention.

**ANSWER: Anthony denies the allegations of paragraph 80.**

81.     The Father's retention of the child in the United States from Germany is therefore wrongful under the Hague Convention because the Father has retained the child from his habitual residence of Germany, in breach of the Mother's rights of custody to the child under German law, which the Mother was exercising at the time of the retention.

**ANSWER: Anthony denies the allegations of paragraph 81.**

82.     Notice is given in this pleading that the Mother is relying upon foreign law. FED. R. CIV. P. 44.1.

**ANSWER:   Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 82.**

83.     The Mother has requested the return of the child to Germany by submitting her Application for Return with the German Central Authority.

**ANSWER: Anthony admits the allegations of paragraph 83.**

84.     The Mother has never consented or acquiesced to the retention of the child in the United States from Germany.

**ANSWER: Anthony denies the allegations of paragraph 84.**

85.     The Mother has promptly, and to the best of her ability, taken all legal steps available to her to seek the return of the child to Germany.

**ANSWER:   Anthony lacks knowledge or information sufficient to form a belief concerning the truth of the allegations of paragraph 85.**

86.     The child is currently physically located within the Northern District of Illinois at 1902 S. Sawyer Avenue, Chicago, Illinois 60623.

**ANSWER: Anthony admits the allegations of paragraph 86.**

## V.     COUNT II - ARTICLE 18 RETURN

87.     The Mother restates and re-alleges the allegations contained in Paragraphs 1 through 86 as if fully set forth herein.

**ANSWER: Anthony repeats and realleges his answers to paragraphs 1 through 86 as if fully set forth herein.**

88.     The Mother invokes Article 18 of the Convention, which grants this Court plenary power to order the child's return at any time.

**ANSWER: Anthony admits that Asli has involved the Convention but denies that she is entitled to relief thereunder.**

## VI.     PROVISIONAL AND EMERGENCY REMEDIES

89.     The Mother requests that the Court issue a Show Cause Order forthwith ordering the appearance of the Father before this Court on the first available date on the Court's calendar, and directing the Mother to serve the Show Cause Order on the Father forthwith by private process.

**ANSWER: Anthony denies the allegations of paragraph 89.**

90.     Unless this Court takes expedited action to issue the initial order requested by the Mother, irreparable harm will occur to the well-being of the child in that he will continue to be deprived of his Mother. Further, the Hague Convention requires expedited action and sets a six-week aspirational goal for final determination of this case.

**ANSWER: Anthony denies the allegations of paragraph 90.**

91.     Pursuant to ICARA § 9004, in a proceeding for the return of a child, "[n]o court exercising jurisdiction ... may ... order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." ICARA § 9004. In this case, the law referred to is that of Illinois.

**ANSWER: Anthony denies the allegations of paragraph 91 on the ground that the statute speaks for itself.**

92.     In Illinois, the UCCJEA is the source for statutory law governing, *inter alia*, the resolution of both domestic and international child custody disputes and is codified as the Illinois Compiled Statutes, §750 ILCS 36/101 *et seq*. Illinois law addresses the appearance of the parties and the child in such cases in §750 ILCS 36/210 of the UCCJEA. That section authorizes this Court to order the appearance of the child and custodian or custodians together and authorizes the court to "enter any orders necessary to ensure the safety of the child . . ." UCCJEA § 36/210 (c). This Court therefore has the authority to issue a show cause order, ordering the appearance of the Father (and the child if the Court so wishes) in that the provisions of 22 U.S.C. § 9004 can and have been met.

**ANSWER:  Anthony denies the allegations of paragraph 92 on the ground that the statutes speak for themselves.**

### VII. UCCJEA DECLARATION

93.     The details regarding the child that are required to be provided under the Illinois UCCJEA are as follows:

A.     The child is currently located with the Father within the jurisdiction of this Court at 1902 S. Sawyer Avenue, Chicago, Illinois 60623

B.      For the five years immediately preceding the filing of this Petition, the child has lived as follows: (A) from 2017 through August 2019, the child lived with the Mother in Illinois; (B) from August 2019 through August 2020, the child lived with the Mother in Wisconsin and spent three weekends each month with the Father in Illinois; (C) from August 2020 through May 2022, the child lived with the Mother in Minnesota and with the Father in Illinois, on a two week alternating schedule; (D) from May 13, 2022 through present, the child has lived in Germany with the Mother, and spent summer 2022, Christmas 2022, and summer 2023 in Illinois for parenting time with the Father; and (E) the child is currently located in Illinois with the Father as a result of the Father's retention of the child in Illinois beginning on July 31, 2023.

C.      The Mother does not have information of any custody proceeding concerning the child pending in any other court of this or any other State except as set forth in Section III *supra*.

D.      The Mother does not know of any person or institution not a party to the proceedings that has physical custody of the child or claims to have guardianship and parental responsibility, or legal custody or physical custody of, or visitation or parenting time with the child.

**ANSWER: Anthony denies the allegations of paragraph 93 on the ground that the statute speaks for itself.**

### VIII. NOTICE OF HEARING

94.      Pursuant to 22 U.S.C. 9003(c), the parties will be given notice of any hearing in accordance with the Illinois UCCJEA and all applicable Federal Rules.

**ANSWER: No answer is required to the allegations of paragraph 94.**

## IX.     ATTORNEYS' FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND ICARA § 9007

95.     The Mother has incurred, and will continue to incur, reasonable and necessary attorneys' fees, expenses and costs as a result of the Father's wrongful retention of the child.

**ANSWER: Anthony denies the allegations of paragraph 95.**

96.     The Mother respectfully requests that this Court award her all of her reasonable and necessary expenses and costs incurred in accordance with ICARA § 9007, upon the filing of a separate motion for reasonable and necessary expenses and costs in accordance with ICARA, the Federal Rules, and this Court's Local Rules.

**ANSWER: No answer is required to the allegations of paragraph 96.**

### TREATY EXCEPTION: HAGUE CONVENTION ARTICLE 13(B)

#### Grave Risk of Harm

1.     The Convention provides several exceptions to return.  Among them is Article 13(b) of the Convention, which provides in relevant part as foll0ows:

> Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –
>
> *b)* there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

2.     The return of the child to Asli in Germany would create a grave risk of harm to the child or otherwise place the child in an intolerable situation for the following reasons:

a.     Asli has repeatedly engaged in violent behavior towards Anthony in the presence of the child.  She has kicked Anthony and sprayed him with pepper spray.

DocuSign Envelope ID: 6A8CF0D6-3F3C-478F-8A2C-8F6E6898B04E

b.      Asli has repeatedly demonstrated her refusal to abide by parenting orders. The May 2022 Allocation Judgment allowed her to relocate temporarily to Germany but clearly provided that any permanent relocation would require a full relocation hearing in the Circuit Court of Cook County where she had chosen to file for a custody judgment and where she stipulated that the child's habitual residence was Illinois.  Nonetheless, she retained the child in Germany, and refused to allow Anthony to take the child to the United States for his parenting time.

c.      Asli has further demonstrated her unwillingness to abide by court orders by taking the child to Turkey, from which it would be very difficult for Anthony to obtain the child's return, without notice to or consent of Anthony.

d.      Further, as Asl's actions show, she secretly planned to abduct the child to Germany even before any order was entered by the Circuit Court of Cook County and stipulated to the Allocation Judgment without intending to be bound by its provisions concerning relocation.

WHEREFORE, Respondent Anthony Patterson prays:

A.      That the Petition for Return be denied in its entirety.

B.      That he be awarded his costs, including attorney's fees, incurred herein.

C.      That he be awarded such other and further relief as the Court may find to be just.


 Pursuant to 28 USC § 1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 15, 2023

_____
**Anthony Patterson**

_____
**One of the Attorneys for Anthony Patterson**

Molshree A. Sharma
Reuben A. Bernick (Of Counsel)
Jonathan Standeford
BIRNBAUM GELFMAN SHARMA & ARNOUX
161 North Clark Street, Suite 1700
Chicago, Illinois 60601
(312) 376-8860
notices@bgsafamlaw.com

4874-8692-2368, v. 1